IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


RODNEY ODELL,

           Plaintiff,

v.                                      Case No. 20-2060-JWB

CRITICAL CARE MEDFLIGHT and
BLUE CROSS AND BLUE SHIELD
OF KANSAS, INC.,

           Defendants.


## MEMORANDUM AND ORDER

       This case comes before the court on separate motions to dismiss by Defendants.  (Docs. 19, 32.)  The motions are fully briefed and are ripe for decision.  (Docs. 20, 24, 27, 33, 34, 38.)  For the reasons stated herein, the motion of Defendant Blue Cross Blue Shield of Kansas, Inc. ("BCBS-Kansas") is DENIED and the motion of Defendant Critical Care Medflight ("CCM") is GRANTED IN PART and DENIED IN PART.

### I.  Facts and Background

       The following allegations are taken from Plaintiff's amended complaint (Doc. 13) and are assumed to be true for purposes of deciding the motions to dismiss.

       Plaintiff suffered an injury while working in Kansas on December 4, 2017.  He had an active health insurance policy with BSBC-Kansas at the time.  Plaintiff and BCBS-Kansas agree the policy was part of an employee benefit plan subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq.  (Doc. 20 at 2; Doc. 24 at 1-2.)  Plaintiff was admitted to Via Christi Hospital in Kansas for medical treatment on December 7, 2017.  On

December 28, 2017, Plaintiff was transported by aircraft[1] from Via Christi Hospital in Kansas to Craig Hospital in Colorado.  The aircraft was owned and operated by CCM.  (Doc. 13 at 2.)

Plaintiff signed no contract for air transportation with CCM prior to being transported and, given his medical condition at the time, he lacked the capacity to form a contract with CCM.  No one who may have signed a contract with CCM on Plaintiff's behalf had legal authority or sufficient information to bind Plaintiff to a contract.  Prior to providing transportation, CCM never advised Plaintiff or anyone who may have signed on Plaintiff's behalf that it could charge an unlimited price for air transportation, nor did it advise anyone of the cost or availability of ground transportation from Via Christi to Craig Hospital. (*Id.*)

CCM later charged Plaintiff $175,250.00 for the flight to Craig Hospital.  CCM submitted a claim to BCBS-Kansas for that amount, but BCBS-Kansas claimed the reasonable price for the service was $24,345.60, and it issued payment to CCM for that amount.  (*Id.* at 3.)

CCM requested Plaintiff's assistance in appealing BCBS-Kansas's denial of the claim and assured him he would not face personal responsibility for any amount beyond what BCBS-Kansas paid so long as he allowed CCM to file an appeal and asked BCBS-Kansas for payment of the full amount.  BCBS-Kansas subsequently denied the appeal and refused to pay more than the $24,345.60 already paid. (*Id.*)

CCM again asked for Plaintiff's assistance.  Plaintiff, under the impression CCM would not pursue him personally if he assisted, sent BCBS-Kansas a letter requesting payment of the remaining $150,904.40 to CCM.  BCBS-Kansas again refused, despite having paid $180,909.03 on behalf of a different policy holder for air transportation provided by CCM in 2017.  CCM thereafter informed Plaintiff it planned to pursue him personally for the full amount, and on

---

[1] The briefs state that the aircraft was a helicopter.  (Doc. 34 at 1.)

January 31, 2020, CCM issued a demand to Plaintiff for payment of $175,250.00.  CCM's demand failed to disclose or take account of the payment already issued by BCBS-Kansas.  Plaintiff asked CCM to cancel the remaining balance but it refused to do so. (*Id.* at 3-4.)

Plaintiff's amended complaint alleges subject matter jurisdiction based on a claim arising under federal law and based on supplemental jurisdiction.  (*Id.* at 1.)   Count I seeks a declaration of the parties' rights pursuant to 28 U.S.C. § 2201, including determinations that Plaintiff lacked legal capacity to enter a contract with CCM; that Plaintiff and CCM had no agreement because CCM failed to disclose or negotiate a price; that any agreement as to price by someone other than Plaintiff is unenforceable against Plaintiff; that Plaintiff's obligation to CCM was limited to assisting CCM with its claim; and that if CCM has any legal right to further payment, BCBS-Kansas is obligated to pay it.  (*Id.* at 6-7.)  Count II alleges that CCM committed various violations of the Kansas Consumer Protection Act (KCPA) including by making false or misleading representations of fact, making willful use of ambiguity as to a material fact, and willfully concealing or omitting a material fact.  (*Id.* at 7-9.)  Count III alleges a wrongful denial of benefits by BCBS-Kansas.  It alleges that the denial of the remainder of the CCM claim by BCBS-Kansas was arbitrary and capricious, was inconsistent with prior payments by BCBS-Kansas for identical services, and was not supported by substantial evidence.  It seeks judgment against BCBS-Kansas for the remaining balance of the CCM claim, as well as other relief.  (*Id.* at 11.)

## II.  Motion to Dismiss Standards

In order to withstand a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). Plausible does not mean "likely

to be true," but refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Id.* (citing *Twombly*, 127 S. Ct. at 1974).

All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). As the Tenth Circuit observed:

> Though a complaint need not provide detailed factual allegations, it must give just enough factual detail to provide fair notice of what the claim is and the grounds upon which it rests. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts. If, in the end, a plaintiff's well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint fails to state a claim.

*Carbajal v. McCann*, No. 18-1132, 2020 WL 1510047, at *3 (10th Cir. Mar. 30, 2020).

### III.  Analysis

### A. Claim against BCBS-Kansas

Count III of the amended complaint alleges that BCBS-Kansas wrongfully denied Plaintiff benefits under the insurance policy.  BCBS-Kansas argues Count III[2] fails to plausibly state a claim for benefits due under an ERISA plan because it does not identify the plan language that BCBS-Kansas allegedly violated.  (Doc. 20 at 6.)

ERISA authorizes a civil action by a participant or beneficiary of an ERISA plan to recover benefits due him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.  29 U.S.C. § 1132(a).  BCBS-Kansas does not claim that Plaintiff has failed to sufficiently allege that he is a participant or

---

[2] The motion actually cites "Count IV," which was the claim for ERISA benefits in the initial complaint.  (Doc. 20 at 5-7.)  The ERISA claim in the amended complaint is Count III.  (Doc. 13.)  The two counts are identical in all material respects.

4

beneficiary of an ERISA plan, nor does it claim that he failed to exhaust his administrative remedies. It claims only that the complaint fails to identify the language of the plan that Plaintiff contends BCBS-Kansas violated.

As BCBS-Kansas correctly points out, a plaintiff asserting a claim for benefits under section 1132(a) must show that benefits are due "under the terms of the plan." *Id.* Ordinarily this would require references in the complaint to the terms of the plan or at least an explanation as to why it requires the payment of benefits. Although the amended complaint in this case does not explicitly reference the plan terms, the court nevertheless concludes the amended complaint has plausibly stated a claim for benefits due under the plan. The amended complaint alleges in part that when the CCM claim for $175,250.00 was submitted to BCBS-Kansas, the latter asserted that the reasonable price for the service was $24,345.60 and it issued payment to CCM for that amount. Plaintiff also alleges that BCBS-Kansas previously paid $180,909.03 to another policyholder on a similar claim. It is a fair inference from these allegations that the reasonable price of necessary air transportation was a benefit promised under the policy. (BCBS-Kansas is presumably not in the habit of voluntarily making such payments, and it is fair to infer that it concluded the policy required payment of the reasonable price of medically necessary air transportation.) Although the amended complaint clearly could have been more detailed and arguably should have summarized or cited the relevant policy provisions, under the circumstances Plaintiff has met the standard for plausibly alleging a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). BCBS-Kansas's motion to dismiss the claim is accordingly denied.

**B. Claims against CCM**

Count I of the amended complaint seeks several declarations concerning the parties' rights. Count II alleges that CCM violated the KCPA.  In its motion to dismiss, CCM argues both claims are preempted by the Air Deregulation Act (ADA), 49 U.S.C. § 41713.  (Doc. 33 at 2.)  It additionally argues Count II fails to plead allegations of fraud with particularity as required by Rule 9(b) and otherwise fails to state a plausible claim under the KCPA.  (*Id.*)

1. Preemption generally under the ADA.  The ADA preemption clause provides that a state may not enforce "a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier under this subpart."  49 U.S.C. § 41713(b)(1).[3]  The ADA itself eliminated *federal* regulation of carrier prices, routes, and services in order to permit these aspects of air transportation to be set by market forces, and the preemption provision was included to prevent states from undoing what the ADA was meant to accomplish.  *Northwest, Inc. v. Ginsberg,* 572 U.S. 273, 283 (2014).  The leading Tenth Circuit case on ADA preemption is *Scarlett v. Air Methods Corp.,* which considered class action claims by plaintiffs who were transported by air ambulance carriers and were then subjected to demands for large payments (averaging $47,000) by the air carriers.  922 F.3d 1053 (10th Cir. 2019).   As *Scarlett* noted at the outset, the Tenth Circuit has applied the ADA's preemption clause to prohibit state regulation of air ambulance rates.  *Scarlett,* 922 F.3d at 1060 (citing *EagleMed LLC v. Cox,* 868 F.3d 893 (10th Cir. 2017)).

In its analysis, *Scarlett* first discussed a series of Supreme Court decisions dealing with ADA preemption, which are summarized below.  One case recognized that the phrase "related to" in section 41713 expresses a broad preemptive purpose and that a claim "relates to" rates, routes,

---

[3] It appears undisputed at this point that CCM is an air carrier within the meaning of the ADA.  *Cf. Scarlett v. Air Methods Corp.*, 922 F.3d 1053 (10th Cir. 2019) (finding that an air ambulance service that was authorized to provide interstate flights was an air carrier.)

or services if the claim "has a connection with, or reference to, airline rates, routes, or services." *Id.* (quoting *Ginsberg,* 572 U.S. at 280). Applying that standard, the Supreme Court held in *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374 (1992) that the ADA preempted the use of state consumer protection laws to regulate airline advertising. *See Ginsberg,* 572 U.S. at 280.

Next, in *American Airlines, Inc. v. Wolens,* 513 U.S. 219 (1995), the Supreme Court addressed ADA preemption as applied to two different types of claims against an airline that changed its frequent flier program. The first claim alleged violations of the state's consumer fraud laws. This claim was found to be preempted because it would interfere with airlines' marketing of their services, something Congress intended to leave to the airlines. *Wolens,* 513 U.S. at 227-28. A claim alleging breach of contract was not preempted, however, because "terms and conditions airlines offer and passengers accept are privately ordered obligations 'and thus do not amount to a State's enactment or enforcement of any law, rule, regulation, standard, or other provision having the force and effect of law'" within the meaning of the ADA. *Id.* at 228-29 (citation and brackets omitted.) "A remedy confined to a contract's terms simply holds parties to their agreements – in this instance, to business judgments an airline made public about its rates and services." *Id.* at 229. This holding was consistent with the ADA's design for promoting reliance on competitive market forces, according to *Wolens,* because such markets "depend fundamentally on the enforcement of agreements freely made, based on needs perceived by the contracting parties at the time." *Id.* at 230. As such, the ADA "permits state-law-based court adjudication of routine breach-of-contract claims…." *Id.* at 232.[4] The act "stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from

---

[4] *Wolens* made clear the ADA does not authorize courts to develop a body of federal common law to adjudicate such contract claims. *Wolens,* 513 U.S. at 232.

affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated." *Id.*

The scope of this "*Wolens* exception" was later clarified in *Ginsberg,* 572 U.S. at 276, where the Court held that a claim for breach of the implied covenant of good faith and fair dealing was preempted by the ADA where it sought to enlarge the contractual obligations the parties voluntarily adopted. The Court first found that state common law rules are "laws … or other provisions having the force and effect of law" within the meaning of the ADA preemption clause. *Id.* at 281-84. The Court next found the breach of implied covenant claim – which challenged an airline's termination of its frequent flyer program – "related to" the airline's rates for tickets (because using miles reduced the ticket price) and its services (miles affected access to flights and upgrades). Finally, *Ginsberg* concluded the implied covenant of good faith was a state-imposed obligation under Minnesota law (which governed the claim), because Minnesota law did not permit the parties to contract out of the covenant. "When the law of a State does not authorize parties to free themselves from the covenant, a breach of covenant claim is pre-empted under the reasoning of *Wolens.*" *Id.* at 287. On the other hand, *Ginsberg* indicated a state's implied covenant rules would escape preemption "if the law of the relevant State permits an airline to contract around those rules…." *Id.* at 288.

After reviewing these cases, *Scarlett* considered their application to claims by plaintiffs who had been transported by air ambulance carriers. The court first addressed a claim that the air carriers breached an implied contract (arising under state common law) by charging more than the reasonable value of their services. *Scarlett,* 922 F.3d at 1064. The court pointed out there are three types of contracts: (1) express; (2) implied-in-fact; and (3) implied-in-law. *Id.* A claim based on the first type (express contract) is not preempted under *Wolens.* An agreement of the second

type (implied-in-fact) is founded upon a meeting of the parties' minds and is inferred, as a matter of fact, from conduct of the parties and circumstances showing their tacit understanding.  *Id.*  An agreement of the third type (implied-in-law) is a "fiction of law" in which a promise to perform a duty is imputed by law. *Id.*  The distinction between the latter two may be critical, as claims based on duties implied-in-law "are necessarily preempted for lack of mutual assent" under the rule of *Ginsberg.  Id.* at 1065.  Claims based on implied-in-fact contracts, however, can survive ADA preemption if two conditions are met: (1) state law allows the parties to contract around an implied price term; and (2) the implied price term is used to effectuate the intentions of the parties or their reasonable expectations.  *Id.*  If the claim fails either requirement, it is preempted; if both requirements are met the claim is not preempted, and a court can supply an implied price term consistent with the parties' agreement at the time the implied-in-fact contract was formed.  *Id.* at 1065-66.  Because the plaintiffs in *Scarlett* alleged only that the parties did not enter into an agreement or agree on specific terms and did not allege any implied-in-fact contract, their claim for breach of implied contract was necessarily preempted.  *Id.* at 1066.

The plaintiffs in *Scarlett* also sought a declaratory judgment that they had no contractual obligation to pay the air carriers' bills because they had never agreed on a price.  *Id.*at 1067.  The Tenth Circuit reversed a district court's dismissal of this claim, noting that under *Ginsberg* a court can enforce contractual terms and conditions offered by defendants and accepted by plaintiffs without running afoul of the ADA preemption provision, and that to enforce a contract a court must first confirm that a contract exists.  *Id.*  (citations omitted.)  "Therefore, the ADA does not prohibit a court from declaring that, because the parties never agreed on a price, no express or implied-in-fact contracts were formed." *Id.* at 1068.  To make such a declaration, a court "would need only to examine whether there was the necessary mutual consent to form a contract."  *Id.*

(citing, inter alia, *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 289-90 (5th Cir. 2002) (holding that defendant could raise fraudulent inducement as defense in breach of contract action without offending the ADA's pre-emption provision because "fraudulent conduct precludes the required mutual assent") and *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 609 (7th Cir. 2000) ("When all a state does is … determine whether agreement was reached, or whether instead one party acted under duress, it transgresses no federal rule.")).

*Scarlett* also addressed a claim by the plaintiffs alleging unjust enrichment.  The court concluded this claim was preempted, noting ADA preemption "prohibits courts from imposing an equitable remedy in the absence of a contract because the remedy would reflect the court's policy judgments, not the parties' mutual assent."  *Id.* (citing *Wolens,* 513 U.S. at 232-33).  In dismissing the claim, *Scarlett* observed that although the potentially unfair effect of ADA preemption on air ambulance prices is ultimately a matter for Congress to address, plaintiffs have some recourse. Namely, "once an air ambulance company asserts that a patient has a contractual obligation to pay his bill, that patient can sue for declaratory relief to confirm that he is so obligated," and if an air ambulance company has breached a contractual duty owed to a patient, that patient can sue for breach of contract.  *Id.* at 1069.[5]

---

[5] *Ginsberg* also pointed out that preemption of a state remedy does not leave a consumer without any protection.  The ADA itself is premised on the view that passengers' interests are most effectively promoted by allowing the free market to operate, and that if an airline acquires a reputation for mistreating customers, customers can avoid the airline and give their business to others.  *Ginsberg,* 572 U.S. at 288.  Federal law also gives the Department of Transportation (DOT) authority to prohibit and punish unfair and deceptive practices in air transportation.  *Id.* at 289 (citation omitted).   And as noted in *Scarlett,* Congress has now given the DOT expanded authority to regulate air ambulances. *Id.*  In that regard, the DOT's website indicates a DOT advisory committee is required to report to certain agency heads and Congressional committees on "recommendations with respect to the disclosure of charges and fees for air ambulance services and insurance coverage, consumer protection and enforcement authorities of both the Department of Transportation and State authorities, and the prevention of balance billing to consumers," and the Secretary of Transportation is thereafter required to report to a Congressional committee on how and when the Secretary will conduct oversight of air ambulance providers. *See* https://www.transportation.gov/airconsumer/AAPB (last accessed Nov. 18, 2020).

2. <u>Application to Plaintiff's claim for declaratory relief</u>.  Count I of the amended complaint requests relief in the form of various declarations.  The court has separated the requests into two groups for purposes of discussion.  The first group seeks declarations that: there is a lack of any express or implied-in-fact contract between Plaintiff and CCM; Plaintiff lacked the legal capacity to enter a contract with CCM; CCM made promises to Plaintiff limiting his obligation to assisting CCM with its claim submission to BCBS-Kansas; there was no mutual assent or agreement between Plaintiff and CCM concerning price; any agreement as to the price CCM could charge was made by someone other than Plaintiff; and if CCM has a legal right to further payment, then BCBS-Kansas has the obligation to pay it.  The second group seeks declarations that: the lack of agreement as to price "eliminates any right for CCM to collect any payment from Plaintiff individually"; CCM "has no legal enforceable right to collect the prices charged through court proceedings or other collection efforts, and Plaintiff has no obligation to pay"; and any agreement made by someone other than Plaintiff is "unenforceable against Plaintiff under Kansas law."  (Doc. 13 at 6-7.)

CCM fails to show that declaratory relief relating to the first group listed above is preempted by the ADA.  *Ginsberg* makes clear a court can enforce contract terms that the parties have mutually agreed upon without running afoul of ADA preemption.  And to enforce a contract, "a court must first confirm that a contract exists."  *Scarlett,* 922 F.3d at 1067.  Just as in *Scarlett,* CCM has "offered no reason why a court that can enforce a contract would be prohibited from 'declar[ing] the rights and other legal relations' arising from a contractual relationship, or lack thereof."  *Id.*  In fact, Plaintiff's request for a declaration that there was no express or implied-in-fact agreement is precisely the type of relief permitted in *Scarlett. Id.* at 1068 ("[T]he ADA does not prohibit a court from declaring that, because the parties never agreed on a price, no express or

implied-in-fact contracts were formed.")  Similarly, Plaintiff's capacity to enter into a contract, the capacity or authority of another person to contract on Plaintiff's behalf, and whether CCM a made a promise to Plaintiff that his liability would be limited all appear to be matters related to determining whether a contract exists, and a declaration concerning those matters would not be preempted under *Scarlett*. Finally, the parties do not specifically address the requested declaration that BCBS-Kansas is obligated to pay the remaining balance if it is determined that CCM is entitled to payment.  At this point no preemption of this claim has been shown, since whether BCBS-Kansas has an obligation to pay CCM's bill is a matter of contract and ERISA law, not a state law or regulation relating to air carrier rates or services.  Insofar as CCM seeks dismissal of the foregoing portions of Count I, its motion to dismiss Count I is denied.

The court agrees with CCM that some of the relief sought by Plaintiff in Count I – namely the declarations listed in the second group above – are exceedingly broad, and for that reason may be preempted, at least in part.  For example, Plaintiff seeks a declaration that the lack of mutual assent between Plaintiff and CCM "eliminates *any legal right* for CCM to collect payment" and that CCM "has *no legal enforceable right* to collect the prices charged…."  (Doc. 13 at 7) (emphasis added.)  Such declarations may go beyond the bounds of *Wolens*, which allows a court to address contractual obligations the parties have voluntarily adopted, and beyond the bounds of *Scarlett,* which permit a court to determine whether a contract exists and whether it has been breached, as well as to make declarations predicate to such determinations. *See Schneberger v. Air Evac Ems, Inc.*, 749 F. App'x 670, 678 (10th Cir. 2018)  ("[T]he plaintiffs have failed to make an adequate showing that the narrow *Wolens* exception for claims relating to 'voluntarily undertaken' contractual obligations applies to save the plaintiffs' claims from preemption. … Recall that this exception applies to common-law contract doctrines but only insofar as the doctrines serve 'to

effectuate the intentions of parties or to protect their reasonable expectations,' rather than to protect 'community standards of decency, fairness, or reasonableness.'") (citing *Ginsberg,* 572 U.S. at 286).  Insofar as Count I seeks declaratory relief beyond the limits of *Wolens*, it would be preempted by the ADA; however, at this stage of the proceedings it remains unclear whether CCM believes it has a right to payment on a non-contractual theory.  Accordingly, CCM's motion to dismiss Count I is denied.

> 3.  Count II – KCPA claims

Count II alleges that CCM committed a variety of KCPA violations, including by making false or misleading representations, by willfully using ambiguity or failing to state a material fact, by offering property "without intent to supply reasonable, expectable public demand," by committing deceptive acts and engaging in a pattern of such conduct, by failing to provide consumers a material benefit, and by making unconscionable representations.  (Doc. 13 at 9-10.) The court concludes these claims are preempted by the ADA because they relate to the price CCM charged for its services and because they do not fall within the *Wolens* exception allowing enforcement of mutually agreed-upon contracts.

Plaintiff argues his KCPA allegations do not relate to the price of CCM's services because they do not seek to control the amount charged, but rather challenge CCM's method of business. (Doc. 34 at 5.)  That argument is not consistent with case law and is not persuasive.  The KCPA claims alleged in Count II bear a relation to CCM's price for its services, as virtually all of the claims (to the extent they are explained in the amended complaint) are dependent on CCM's alleged lack of disclosure or misleading representations concerning the price it would charge for its service.  Allowing damage claims in this context could clearly have some impact on carrier prices.  *Cf. Wolens,* 513 U.S. at 228 (finding consumer fraud claims relating to airline advertising

were preempted). It is possible that fraud on CCM's part or its alleged lack of disclosure might be a proper subject for declaratory relief, but only insofar as it would show whether there was or was not mutual assent between the parties concerning price.  *Cf. Lyn-Lea Travel Corp.*, 283 F.3d at 289-90 (defendant could raise fraudulent inducement without offending the ADA's pre-emption provision because "fraudulent conduct precludes the required mutual assent"); *United Airlines, Inc.*, 219 F.3d at 609 ("When all a state does is … determine whether agreement was reached, or whether instead one party acted under duress, it transgresses no federal rule.")).  The KCPA claims in Count II seek damages and other relief not based on what the parties agreed to, but for breach of standards of decency or fairness imposed by Kansas statutes.  Such relief is preempted by the ADA.  *See Scarlett*, 922 F.3d at 1068 (citing *Wolens*, 513 U.S. at 232–33) ("The ADA's pre-emption provision prohibits courts from imposing an equitable remedy in the absence of a contract because the remedy would reflect the court's policy judgments, not the parties' mutual assent.")  Moreover, it is abundantly clear that Congress intended to displace state remedies of the type sought in Count II, as the ADA specifically grants the Secretary of Transportation authority to determine whether any carrier has engaged in an unfair or deceptive practice, or an unfair method of competition, and to order the carrier to cease such practices.  49 U.S.C. § 41712.  *See also Wolens,* 513 U.S. at 233 (finding consumer fraud claims were preempted, unlike contract claims, because "[t]he basis for a contract action is the parties' agreement; to succeed under the consumer protection law, one must show not necessarily an agreement, but in all cases, an unfair or deceptive practice.")

Finally, Plaintiff argues his KCPA claims are not subject to preemption to the extent they present no conflict between obligations under state and federal law.  (Doc. 34 at 6.)  The Supreme Court rejected that view in *Morales,* however, where it found that ADA preemption displaced all

state regulation concerning price and services, even if it did not conflict with federal law. *Morales*, 504 U.S. at 387 (rejecting argument that ADA preemption does not apply if the state and federal laws are consistent; pointing out that "[n]othing in [the preemption clause] suggests that its 'relating to' preemption is limited to *inconsistent* state regulation….") (emphasis in *Morales*.) The court accordingly grants the motion to dismiss the claims in Count II because they are preempted by the ADA.

## IV. Conclusion

The motion to dismiss of Defendant BCBS-Kansas (Doc. 19) is DENIED. The motion to dismiss of Defendant CCM (Doc. 32) is DENIED IN PART and GRANTED IN PART. The motion is DENIED as to Count I and GRANTED as to Count II of the amended complaint.

IT IS SO ORDERED this 25th day of November, 2020.


_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE